IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**THERON D. HALL,**

    Petitioner,

v.

**MARK NOOTH,**

    Respondent.

No. 2:14-cv-00569-SB

OPINION AND ORDER

**MOSMAN, J.,**

On November 9, 2018, Magistrate Judge Stacie F. Beckerman issued her Findings and Recommendation ("F&R") [100], recommending that I grant Mr. Hall's Petition for a Writ of Habeas Corpus [1] as to ground one (ineffective assistance of trial counsel) and deny it as to grounds two (unknowing and involuntary guilty plea), three (ineffective assistance of appellate counsel), and four (constitutional violation based on a jury instruction).[1] Judge Beckerman recommended that I grant a Certificate of Appealability (COA) on ground three only. Mr. Nooth objected [111] to the F&R on the grounds that it (1) bases its grant of relief on a claim that Mr. Hall neither raised in his federal habeas petition nor fairly presented to the habeas court; and (2) fails to afford appropriate deference to the state court's decision denying relief on ground one as

---

[1] Mr. Hall's pro se Petition raised four grounds for relief but his supporting brief, which his appointed counsel filed, addresses only grounds one and three.

1 – OPINION AND ORDER

required by 28 U.S.C. § 224(d).[2] Mr. Hall responded to Mr. Nooth's objections. As discussed below, I agree with Mr. Nooth that, applying AEDPA's deferential standard of review, the state court's decision denying Mr. Hall's ineffective assistance of counsel claim was not contrary to clearly established law. Accordingly, I reject Judge Beckerman's recommendation that I grant ground one of Mr. Hall's Petition. I, however, adopt her recommendation that I deny grounds two, three, and four of the Petition and grant a COA as to ground three.

## STANDARD OF REVIEW

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendations as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny with which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

///

///

---

[2] Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, § 104, 110 Stat. 1214, 1218 (amendments to 28 U.S.C. § 2254). AEDPA "modified a federal court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

2 – OPINION AND ORDER

## BACKGROUND

At a gathering on March 3, 2003, Mr. Hall shot and killed Carlos Hernandez-Sanchez in the course of robbing him and Alejo Laura-Villanueva. While in custody in New Mexico on separate felony charges, Mr. Hall admitted to two Portland Police Bureau detectives that he shot Mr. Hernandez-Sanchez. New Mexico extradited Mr. Hall to Oregon where a Multnomah County grand jury indicted him on charges of aggravated murder and two counts of robbery in the first degree with a firearm. Two appointed lawyers, (collectively referred to as defense counsel), represented him. Before trial, the trial judge denied Mr. Hall's motion to substitute counsel, noting, "I am confident that [defense counsel] have done everything they need to do to prepare for trial in this case" and "They clearly are prepared for trial, I think both legally and through their investigation." [25-1 at 41 of 315]. The trial judge also denied Mr. Hall's pre-trial motion to suppress all the statements he made while in custody in New Mexico.

Mr. Hall's trial began in May 2006. Mr. Hall's defense counsel asserted an affirmative defense at trial of guilty except for insanity (GEI) under Or. Rev. Stat. § 161.295. At the time of trial, this defense required Mr. Hall to prove that "as a result of mental disease or defect at the time of engaging in criminal conduct [he] lack[ed] substantial capacity to either appreciate the criminality of the conduct or to conform the conduct to the requirements of law." Or. Rev. Stat. § 161.295(1). In 2004, about two years before Mr. Hall's trial, the Oregon Court of Appeals held that Or. Rev. Stat. § 161.295 "does not provide that the [GEI] defense is available upon proof of a lack of capacity as a result of mental disease or defect *in combination with* other factors such as voluntary alcohol consumption." *State v. Peverieri*, 192 Or. App. 229, 232-33, 84 P.3d 1125 (2004) (emphasis in original). The *Peverieri* court rejected the defendant's claim that the trial court erred in rejecting his insanity defense that was not "a result of mental disease or defect" but

3 – OPINION AND ORDER

instead was "a result of the mental disease or defect *and* voluntary intoxication." *Id.* (emphasis in original)

Defense counsel offered four expert witnesses in support of Mr. Hall's GEI defense, including Dennis Swiercinsky, a psychologist specializing in neuropsychology. Dr. Swiercinsky concluded Mr. Hall lacked the "substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirement of the law." [25-3 at 226[3]]. He testified on cross-examination that Mr. Hall did not understand that killing someone with a pistol was wrong under the law. *Id.* at 227. Dr. Swiercinsky acknowledged that Mr. Hall told him he had "consumed a considerable amount of alcohol on the night of the crime," and he agreed that Mr. Hall's consumption of alcohol would "contribute to a marked reduction in his ability to reason." *Id.* at 227-228. Dr. Swiercinsky clarified that "the alcohol would be a factor, but I wouldn't - - and I don't know if this is what you're implying or not - - but it wouldn't require the alcohol to produce that type of behavior." *Id.* at 228. He conceded that the alcohol with Mr. Hall's "type of brain . . . makes things worse," but again made clear that "the alcohol was a factor but it was not a necessary factor" and that "mental disease and defect is sufficient." *Id.* at 228-229 and 231-232]. Dr. Swiercinsky explained that "[t]he alcohol could exacerbate, could create other factors, but that it does not - - it was not required at that moment in order to substantiate my opinion that he has a mental disease or defect." *Id.*

Other witnesses generally agreed that Mr. Hall was intoxicated at the time of the shooting. On cross-examination, Irving Robinson, who attended the March 3 gathering, testified that Mr. Hall "appeared to be intoxicated and loaded on weed." [25-2 at 181]. One of Mr. Hall's

---

[3] The cited page numbers refer to the CM/ECF pagination at the top of the page, not to the transcript or exhibit page number.

4 – OPINION AND ORDER

friends, Anthony Mason, stated that Mr. Hall had been drinking earlier that day and had also used marijuana. *Id.* at 239, 247-248. Wendelin Elliott, at whose home the March 3 gathering occurred, also testified that Mr. Hall was intoxicated when he shot Mr. Hernandez-Sanchez. *Id.* at 214. Only Mr. Lara-Villanueva stated that Mr. Hall "didn't look like he was very drunk."

After the defense rested, the prosecutor moved for a directed verdict on the GEI defense on the grounds *Peverieri* barred a defendant from "claim[ing] the defense of guilty except for insanity if he was also voluntarily intoxicated at the time that the incident took place." 26-1 at 164-165. One of Mr. Hall's attorneys, argued that, taken in a light most favorable to the defense, the evidence showed "there is an issue of a not guilty by insane defense." *Id.* at 165-166. The trial judge stated he was "satisfied that [defense counsel] established that there's some evidence -- some evidence to establish a mental disease or defect . . . [but] the question is . . . when it is in combination with alcohol use, can you go forward on the defense." *Id.* The trial judge stated defense counsel had "the most wishy-washy expert on the issue that I think you could ever imagine" who "was back-peddling like nobody's business on the issue of alcohol use once it became clear to him what the law was." *Id.* at 167. Mr. Hall's counsel countered that "the people that were testifying that Mr. Hall was drunk or under the influence of alcohol were people who were themselves so drunk that they could barely stand up[]" and that "[was] not credible testimony to say for sure that Mr. Hall was in fact intoxicated to that level or degree that it would take away an insanity defense." *Id.*

The trial judge found "in the brightest light most favorable to the Defense in this case, it is a fact for the jury . . . for them to determine what level of intoxication exists and how to balance of [sic] the intoxication against the issue of insanity and mental illness." *Id.* at 168-169. The trial judge added that "it's pretty clear law right now from the Court of Appeals as to where

5 – OPINION AND ORDER

this defense is going" and that he would "allow the Defense to go forward with some reservation in terms of how I see the evidence in this case." *Id.* at 169.

When discussing jury instructions with the parties at the close of trial, the trial judge asked defense counsel to clarify whether they planned to ask for a lesser included offense; the trial judge noted his understanding was "you were asking for Felony Murder as a lesser included of Aggravated Murder, and I wasn't sure of what exactly you meant at that time." [26-2 at 209]. In response, one of Mr. Hall's attorneys asked for a felony murder instruction because the state argued that under *Peverieri* Mr. Hall's voluntary intoxication precluded his GEI defense. *Id.* at 209-210. Defense counsel noted that intoxication could negate intent, which would allow a jury to find Mr. Hall guilty of felony murder, not aggravated murder. *Id.* at 210. One of Mr. Hall's attorneys also asked, for the first time, for a manslaughter instruction. *Id.* The trial judge expressed annoyance that the attorney had not previously requested a manslaughter instruction and ruled that he would include an instruction on "intentional murder" but would deny the request for a lesser included instruction of manslaughter. *Id.* at 210-211, 216.

In a later discussion about jury instructions, the trial judge decided "out of an abundance of caution" to include all the lesser-included instructions, including manslaughter because the state wanted them included. [26-3 at 28-29]. The prosecutor asked the trial judge to include these instructions because she worried defense counsel planned to argue in closing that the state had not meet its burden of proof on the aggravated murder charge and did not "want to have any possibility that there would be reversible error because there was at least some small evidence of intoxication on the part of the defendant." *Id.* at 30. In response, Mr. Hall's counsel reminded the court that two of the eyewitnesses to the crime "indicated that Mr. Hall was drunk." *Id.* The

trial judge agreed to give the "lesser included" instructions because the state conceded them. *Id.* at 31.

During closing arguments, the prosecutor argued that if the jury found Mr. Hall "hasn't demonstrated that he wasn't intoxicated, then you can't - - then he simply cannot apply the [GEI] defense." [26-3 at 43]. Defense counsel did not object to the prosecutor's characterization of the law on the GEI defense, and Mr. Hall's lawyer who gave the closing argument did not mention Mr. Hall's alleged intoxication during the defense's closing. The trial judge instructed the jury that "if you find the defendant's voluntary intoxication, if any, contributed to defendant's lack of substantial capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of the law, then you must reject his defense of guilty except for insanity." *Id.* at 107. The jury rejected Mr. Hall's GEI defense and returned a verdict of guilty on all counts. [24-1 at 2-4]. The jury declined to impose the death penalty, and the trial judge imposed a sentence of life without parole for the aggravated murder conviction and two concurrent ninety-month sentences for robbery in the first degree. *Id.*

Mr. Hall sought state post-conviction relief (PCR) on the ground, among others, that his trial counsel performed below a reasonable standard by not adequately investigating the facts and properly preparing to put on a viable defense. [24-2 at 29]. In its response, the state relied in part on affidavits from Mr. Hall's trial counsel. Both his trial attorneys stated they had a full understanding of the law regarding the defenses of GEI and voluntary intoxication and that they believed a GEI defense was stronger than voluntary intoxication because the evidence did not support a claim that Mr. Hall accidentally shot Mr. Hernandez-Sanchez. [24-2 at 155 (¶¶ 14, 17-18)]. and 161(¶¶ 8-10)]. In its December 2011 Findings of Fact, Conclusions of Law, the PCR court found "presentation by trial counsel of the defense of [GEI] was reasonable under the

circumstances of the case." *Id.* at 314. The PCR court noted that despite admitting the murder for which he was charged, Mr. Hall refused to accept the plea deal offered by the state; therefore, "trial counsel had to come up with some kind of defense." *Id.* The PCR court concluded that "[Mr. Hall] was not denied the right to assistance of counsel . . . as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Id.* at 315.

## LEGAL STANDARD

28 U.S.C. § 2254, as amended by AEDPA, provides the statutory authority of federal courts to issue habeas corpus relief for persons in state custody. The relevant text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgement of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in a light of the evidence presented in the state court proceeding.

## DISCUSSION

### A. Ground One—Ineffective Assistance of Counsel

As the F&R correctly notes, the Supreme Court's decision in *Strickland v. Washington,* clearly established the standards for an ineffective assistance of counsel claim. 466 U.S. 668, 687-88 (1987). Under *Strickland,* a habeas petitioner must establish that his counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that without counsel's deficient performance the proceeding would have turned out differently. *Id.* at 686. Under *Strickland,* mistakes of law constitute unreasonable performance. *Hinton v. Alabama*, 571 U.S 263, 274 (2014) ("An attorney's ignorance of a point of law that is

fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."); *see also Morris v. California*, 966 F.2d 448, 454-55 (9th Cir. 1992).

The F&R relied on the first exception to § 2254(d)'s relitigation bar, the exception in § 2254(d)(1) permitting relitigation where the earlier state court decision resulted from an "unreasonable application of" clearly established federal law. The F&R found the "the PCR court reasonably concluded that defense counsel 'engaged in an extensive and adequate investigation' into the *factual basis* for a GEI defense[, but] the PCR court failed to address whether counsel adequately investigated and understood the applicable law so as to present the defense in a legally viable manner." [100 at 27 (emphasis in original)].

The "pivotal question" here is whether the state court unreasonably applied *Strickland's* standard. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Id.* A state court's decision is not unreasonable merely because it is incorrect or even clearly erroneous. *Lockyer v. Andrade,* 538 U.S. 63, 71 (2003). A federal court must defer to a state court's "determination that a claim lacks merit" and deny federal habeas relief "so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S at 101 (internal citations omitted). The "fairminded jurists" standard is "extremely deferential." *John-Charles v. California*, 646 F.3d 1243, 1247 (9th Cir. 2011).

"Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Even under de novo review, "scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. A fair assessment of trial counsel's performance requires a reviewing court to "eliminate the distorting effects of hindsight, to reconstruct the

9 – OPINION AND ORDER

circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* Because of the deep-rooted difficulty in making such an evaluation, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (internal citations omitted).

Showing the state court unreasonably applied *Strickland* under § 2254(d) "is all the more difficult." *Harrington*, 562 U.S. at 105. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id.* For a federal court reviewing a state court's decision denying an ineffective assistance of counsel claim, "the question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

I find that there is a reasonable argument that Mr. Hall's defense counsel satisfied *Strickland's* deferential standard. Mr. Hall admitted shooting Mr. Hernandez-Sanchez but refused to accept the plea bargain offered to him by the state. There is evidence in the record that Mr. Hall was intoxicated at the time of the crime. *See, e.g.,* [25-2 at 181, 214, 239, 247-248]. There is evidence in the record that earlier on the day of the shooting Mr. Hall had a gun in his hand and said he "needed some money" and would shoot someone and that at the time of the shooting Mr. Hall stated he needed money. *See, e.g.,* [25-2 at 155, 159, 239-240]. Finally, there is evidence in the record, developed by Mr. Hall's defense counsel, that Mr. Hall suffered from mental disease and mental defects. *See, e.g.,* [25-3 at 99, 106-109, 226]. As the PCR court found, Mr. Hall's statements about needing money contradicted the argument that his intoxication caused the murder. Given the evidence, it is reasonable that, from the perspective of

Mr. Hall's defense counsel when they were preparing for trial, a GEI defense seemed like the best choice. Defense counsel was entitled to formulate a strategy that was reasonable at the time. *Strickland*, 466 at U.S. 699.

The record contradicts Mr. Hall's argument that his defense counsel did not understand that voluntary intoxication could negate a GEI defense. Defense counsel put a great deal of effort into establishing a GEI defense and felt that, although *Peveieri* presented some problems, it did not, in all circumstances, bar someone who might have been intoxicated when he committed a crime from asserting a GEI defense. *See e.g.,* [24-2 at 153-155, 160-161]. This is reflected in defense counsel's actions during the trial. When the state moved for a directed verdict on the GEI defense, one of Mr. Hall's attorneys argued that there was not credible evidence to show that Mr. Hall was so intoxicated as to take away his GEI defense. [26-1 at 167].

It is at least debatable that a reasonable attorney could decide, as Mr. Hall's defense counsel did, to forgo argument that his GEI defense was based solely on mental dysfunction based on the circumstances here. Mr. Hall's defense counsel was trying to assert, in light of the state's argument that *Peverieri* precluded his GEI defense, that intoxication could negate intent, which would jury to find Mr. Hall guilty of felony murder instead of aggravated murder. *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (*per curiam*) (recognizing that "deference to counsel's tactical decision in his closing presentation is particularly important"). In this situation, a reasonable attorney could have made a strategic choice to avoid any argument that might downplay his intoxication that would in turn undermine defense counsels' efforts to persuade the jury to find Mr. Hall guilty of a lesser included of felony murder or manslaughter.

Viewed in context, defense counsels' decisions regarding which defense to advance, and how, fit squarely within the sort of tactical decisions to which *Strickland* counsels us to give deference. *See, e.g Harrington*, 562 U.S. at 107 (stating trial counsel was "entitled to formulate a strategy that was reasonable at the time");*Yarborough*, 540 U.S. at 7 (finding a "strong presumption" that counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than "sheer neglect"); *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable."). Heading into trial, it appears defense counsel thought they had an expert who could provide opinion testimony to support a GEI defense resting solely on mental illness and not intoxication. *See, e.g.,* [25-1 at 308-311, 313-315; 25-2 at 1-7 (defense's opening statement explaining Mr. Hall's plan to present a GEI defense)]. When that fell apart on cross examination, they shifted their attention to a lesser-included grounded in lack of intent. *See, e.g.,* [26-2 at 209 (defense counsel's request for a felony murder instruction because the state argued Mr. Hall's voluntary intoxication precluded his GEI defense)]. And all of this effort to find a workable defense must be viewed in light of very powerful evidence of guilt, including Mr. Hall's own confession, that made defense counsels' job an unenviable one.

Accordingly, I find that the PCR court's rejection of Mr. Hall's ineffective assistance of counsel claim was consistent with *Strickland*.[4]

---

[4] In 2014, Mr. Hall's federal habeas counsel learned that the trial judge in Mr. Hall's case had "very strong feelings" that one of his defense attorneys "should no longer be trying death penalty cases" and called the Office of Public Defense Services (OPDS) to express his concerns. [54 at 4, 6]. In a subsequent letter the trial judge recalled this his concerns stemmed from counsel's representation of Mr. Hall and described counsel's presentations during Mr. Hall's trial as "disorganized and without much preparation." *Id.* at 6. The record before the PRC court did not include this evidence. Mr. Hall submitted this evidence for this Court to consider after determining, based only on the evidence before the state court, that the PCR court's denial was unreasonable. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014) (allowing a federal court to

The F&R also concluded that Mr. Hall had established prejudice under *Strickland* based on defense counsels' failure to raise the defense of "partial responsibility" as well as their failure to clarify that Mr. Hall was relying only on his brain dysfunction to support his GEI defense.[5] I disagree.

When assessing prejudice under *Strickland*, the question is whether it is "reasonably likely" the result would have been different. *Id.* at 696. The likelihood of a different result must be substantial, not just conceivable. *Harrington*, 562 U.S. at 112; *Strickland*, 466 U.S. at 693 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."). Mr. Hall cannot establish a reasonable likelihood that the outcome of his trial would have been different if his counsel had offered a "partial responsibility" defense or had clarified that Mr. Hall was relying only on his mental dysfunction and on not a combination of his mental impairment and his voluntary intoxication to prove his GEI defense.

The record here strongly supports the jury's verdict. *Strickland*, 466 U.S. at 696 (stating "a verdict . . . only weekly supported by the record is more likely to have been affected by

---

consider newly presented evidence if a petitioner sustains his burden of proving the PCR court's decision was objectively unreasonable under § 2254(d)(1)). Because I do not find the PCR court's decision unreasonable, I did not factor Mr. Hall's newly presented evidence into my decision. I clarify, however, that my findings are not meant to excuse at least one defense counsel's weak performance at trial—so weak that it prompted the trial judge to contact the OPDS to express his concerns about counsel's competency in handling death penalty cases. But I am required to view that performance through a "doubly deferential" lens: could any rational jurist find that Mr. Hall overcame the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;" and, if so, that this violation prejudiced him. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (recognizing the "doubly deferential judicial review that applies to a *Strickland* claim evaluated under the §2254(d)(1) standard."

[5] Mr. Hall's argument for prejudice was that effective counsel would have raised defense of diminished capacity due to alcohol and "partial responsibility" and a reasonable jury would have accepted it. [120 at 4].

13 – OPINION AND ORDER

errors" than one with strong evidentiary support). Mr. Hall's admissions and witnesses' trial testimony about Mr. Hall's statements and actions before the shooting indicated the shooting was intentional. *See, e.g.*, [25-2 at 154-155, 529 and 25-3 at 56-58]. A "partial responsibility" defense under Or. Rev. Stat. § 161.3000 denies the intent element of a crime based on mental defect or disease. Given the substantial evidence in the record that the shooting was an intentional act, it is not reasonably likely the jury would have found Mr. Hall guilty of a lesser offense if counsel had offered a "partial responsibly defense" For the same reasons, it is not reasonably likely that offering a diminished capacity defense would have altered the outcome of Mr. Hall's trial.

Likewise, it is not reasonably likely that defense counsels' failure to clarify the basis for the GEI defense affected the outcome of the trial. The record shows Mr. Hall's expert repeatedly clarified during his cross examination that mental dysfunction alone was enough to produce Mr. Hall's inability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. *See, e.g.*, [25-3 at 77-229, 231-232]. It is improbable that a jury, which had already heard that Mr. Hall's mental defect alone was enough to support his defense that he could not form the intent to commit the crime, would have reached a different result if defense counsel had again clarified the basis for the GEI defense in closing argument and jury instructions.

Mr. Hall has not shown that the PCR court's conclusion that there was no ineffective assistance of counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law" under § 2254. I deny relief on ground one of his Petition.

### B. Grounds Three, Four, and Five

Upon review, I agree with Judge Beckerman's recommendation to deny grounds three, four, and five of Mr. Hall's Petition for a Writ of Habeas Corpus and adopt this portion of her F&R as my own opinion.

### C. Certificate of Appealability

Upon review, I agree with Judge Beckerman's recommendation to grant a COA on ground three of Mr. Hall's Petition. In addition, I find reasonable jurists could debate whether Mr. Hall's ineffective assistance of counsel claim should have been resolved in a different manner and grant a COA on ground one.

## CONCLUSION

I DENY Mr. Hall's Petition for a Writ of Habeas Corpus. I grant a Certificate of Appealability on grounds one and three only.

IT IS SO ORDERED.

DATED this 29 day of March, 2019.

MICHAEL W. MOSMAN
Chief United States District Judge